JUDGE CASTEL

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
Frank J. Mazzaferro
475 Park Avenue South, 12th Floor
New York, NY 10016
Telephone: (212) 300-0375

# 15 CV 3706

**RECEIVED**

MAY 13 2015

U.S.D.C. S.D. N.Y.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

DON HADEL, on behalf of himself and all others
similarly situated,

                    Plaintiff,

        -against-

GAUCHO, LLC, SAMBA BRANDS MANAGEMENT,
7TH & BARROW LLC, AVENUE SPOON INC.,
SHIMON BOKOVZA, DANIELLE BILLERA, and
MATTHEW JOHNSON,

                    Defendants.

**CLASS ACTION
COMPLAINT**

Plaintiff Don Hadel ( "Hadel" or "Plaintiff"), individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to himself, and upon information and belief as to other matters, alleges as follows:

### NATURE OF THE ACTION

1.      This lawsuit seeks to recover minimum wages, misappropriated tips, and other wages for Plaintiff and his similarly situated employees – servers, bussers, runners, bartenders, and other "Tipped Employees" – who work or have worked at the Sushi Samba restaurants located at 87 7TH Avenue South, New York, New York 10014 ("West Village Sushi Samba") and 245 Park Avenue South, New York, New York 10003 ("Gramercy Sushi Samba")[1]

---

[1]      The Gramercy Sushi Samba closed in or around July 2014.

(collectively the "Sushi Samba restaurants").

2.      Owned and/or operated by Gaucho, LLC, Samba Brands Management, 7TH & Barrow LLC, Avenue Spoon Inc., Shimon Bokovza ("Bokovza"), Danielle Billera ("Billera"), and Matthew Johnson ("Johnson") (collectively "Defendants"), Sushi Samba is an internationally acclaimed high-end fusion restaurant — which combines Japanese, Brazilian and Peruvian cuisine. Since its founding with its first New York City location in 1999, Sushi Samba has expanded across the globe with restaurants in New York City, Miami Beach, Las Vegas, London and Coral Gables.[2]

3.      According to Defendants' website, Samba Brands Management "operate[s]" the Sushi Samba restaurants and was founded by Shimon Bokovza, Matthew Johnson and Danielle Billera.[3] Shimon Bokovza has identified himself as "in charge of all of the operations of Sushi Samba, worldwide."[4]

4.      Along with the Sushi Samba restaurants, Defendants operate other high end restaurants including Sugarcane Raw Bar and Grill in Miami and Duck & Waffle in London.[5] Information related to any of Defendants' restaurants can be accessed through their websites http://sambabrandsmanagement.com/ and http://sushisamba.com/.

5.      Defendants have been part of a single integrated enterprise that has jointly employed Tipped Employees at the Sushi Samba Restaurants in New York.

6.      Tipped Employees at the Sushi Samba Restaurants perform the same basic job duties, are subject to the same employment policies, practices and procedures, and are directed and/or permitted by Defendants to perform work at all locations without retraining.

---

[2]    http://sushisamba.com/
[3]    http://www.bbook.com/industry-insiders-shimon-bokovza-samba-savvy/
[4]    http://www.bbook.com/industry-insiders-shimon-bokovza-samba-savvy/
[5]    http://sambabrandsmanagement.com/

7.     At all times relevant, the Sushi Samba Restaurants have paid Plaintiff at a "tipped" minimum wage rate – less than the full minimum wage rate for non-tipped employees.

8.     The Sushi Samba restaurants, however, have not satisfied the strict requirements under the Fair Labor Standards Act ("FLSA") or the New York Labor Law ("NYLL") that would allow them to pay this reduced minimum wage (take a "tip credit").

9.     Specifically, Defendants require Plaintiff and other Tipped Employees to engage in a tip distribution scheme wherein they must share 5% of their total tips with Sushi Chefs.

10.    Individuals employed as Sushi Chefs are responsible for preparing and rolling sushi. Sushi Chefs do not have interaction with customers. In that regard, Sushi Chefs do not wait on customers, take customer orders, or deliver food or beverages to customers.  As a result, Sushi Chefs at the Sushi Samba restaurants are not entitled to share tips under the FLSA or the NYLL.

11.    In addition, until in or around 2014, Defendants hosted private parties whereby a 20% service charge was added to the total price paid by customers. Upon information and belief, Defendants misappropriated gratuities from Tipped Employees by retaining and/or redistributing portions of mandatory gratuities and/or service charges paid by customers hosting private events.

12.    This practice was held to be unlawful by the New York Court of Appeals in *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008), and violates Section 146-2.19 of the 2011 New York Hospitality Industry Wage Order, which explicitly states that:

> Adequate notification [of an administrative charge not purported to be a gratuity or tip] shall include a statement in the contract or agreement with the customer, and on any menu and bill listing prices, that the administrative charge is for administration of the banquet, special function, or package deal, is not purported to be a gratuity, and will not be distributed.

13.     Plaintiff brings this action on behalf of himself and similarly situated current and former Tipped Employees who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendants that have deprived Plaintiff and others similarly situated of their lawfully earned wages.

14.     Plaintiff also brings this action on behalf of himself and similarly situated current and former Tipped Employees in New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

## THE PARTIES

**Plaintiff**

### Don Hadel

15.     Hadel is an adult individual who is a resident of New York, New York.

16.     Hadel has been employed by Defendants at the West Village Sushi Samba from in or around 2001 through 2005 and 2006 through the present. During the course of 6 months in or around 2007 and 2008, Hadel worked one night per week at the Gramercy Sushi Samba. The policies and procedures in place were the same at the West Village Sushi Samba and the Gramercy Sushi Samba.

17.     Hadel is a covered employee within the meaning of the FLSA and the NYLL.

18.     A written consent form for Hadel is being filed with this Class Action Complaint.

**Defendants**

19.     Defendants jointly employed Plaintiff and similarly situated employees at all times relevant.

20.     Each Defendant has had substantial control over Plaintiff's working conditions, and over the unlawful policies and practices alleged herein.

21.     Defendants are part of a single integrated enterprise that jointly employed Plaintiff and similarly situated employees at all times relevant.

22.     During all relevant times, Defendants' operations are interrelated and unified.

23.     During all relevant times, the Sushi Samba restaurants have shared a common management and was centrally controlled and/or owned by Defendants.

24.     During all relevant times, Defendants have been Plaintiff's employers within the meaning of the FLSA and the NYLL.

**Gaucho, LLC**

25.     Together with the other Defendants, Gaucho LLC ("Gaucho") has owned and/or operated the Sushi Samba restaurants during the relevant time period.

26.     Gaucho is a foreign business corporation organized and existing under the laws of Delaware.

27.     Gaucho's principal executive office is located at 17 E 16th Street, Fl 2, New York, New York 10003.

28.     Gaucho is owned and operated by Bokovza, Billera, and Johnson.

29.     At all relevant times, Gaucho has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

30. Gaucho applies the same employment policies, practices, and procedures to all Tipped Employees at the Sushi Samba restaurants, including policies, practices, and procedures with respect to payment of minimum wage and tips.

31. Upon information and belief, at all relevant times Gaucho has an annual gross volume of sales in excess of $500,000.

**Samba Brands Management**

32. Together with the other Defendants, Samba Brands Management ("SBM") has owned and/or operated the Sushi Samba restaurants during the relevant time period.

33. SBM 's principal executive office is located at 17 E 16th Street, Fl 2, New York, New York 10003.

34. At all relevant times, SBM has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

35. SBM applies the same employment policies, practices, and procedures to all Tipped Employees at the Sushi Samba restaurants, including policies, practices, and procedures with respect to payment of minimum wage and tips.

36. Upon information and belief, at all relevant times SBM has an annual gross volume of sales in excess of $500,000.

**7TH & Barrow LLC**

37. Together with the other Defendants, 7TH & Barrow LLC ("Barrow") has owned and/or operated the Sushi Samba restaurants during the relevant time period.

38. Barrow is a domestic business corporation organized and existing under the laws of New York.

39. Barrow's principal executive office is located at 87th Seventh Ave South, New

York, New York 10014, the address of the West Village Sushi Samba.

40.     At all relevant times, Barrow has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

41.     Barrow applies the same employment policies, practices, and procedures to all Tipped Employees at the Sushi Samba restaurants, including policies, practices, and procedures with respect to payment of minimum wage and tips.

42.     Upon information and belief, at all relevant times Barrow has an annual gross volume of sales in excess of $500,000.

**Avenue Spoon Inc.**

43.     Together with the other Defendants, Avenue Spoon Inc. ("Avenue") has owned and/or operated the Sushi Samba restaurants during the relevant time period.

44.     Avenue is a domestic corporation organized and existing under the laws of New York.

45.     Avenue's principal executive office is located at 245 Park Avenue South, New York, New York 10003 the address of the Gramercy Sushi Samba.

46.     At all relevant times, Avenue has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including timekeeping, payroll, and other employment practices.

47.     Avenue applies the same employment policies, practices, and procedures to all Tipped Employees at the Sushi Samba restaurants, including policies, practices, and procedures with respect to payment of minimum wage and tips.

48.     Upon information and belief, at all relevant times, Avenue has an annual gross volume of sales in excess of $500,000.

**Shimon Bokovza**

49.     Upon information and belief, Bokovza is a resident of the State of New York.

50.     At all relevant times, Bokovza has been the co-founder, owner, and operator of the Sushi Samba restaurants.

51.     Bokovza identifies himself as the "FOUNDER & CEO" of SBM and the Sushi Samba restaurants on his LinkedIn page and on SMB's website.

52.     Bokovza has identified himself as "in charge of all of the operations of Sushi Samba, worldwide."[6]

53.     At all relevant times, Bokovza has had power over personnel decisions at the Sushi Samba restaurants, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

54.     At all relevant times, Bokovza has had power over payroll decisions at the Sushi Samba restaurants, including the power to retain time and/or wage records.

55.     At all relevant times, Bokovza has been actively involved in managing the day to day operations of the Sushi Samba restaurants.

56.     At all relevant times, Bokovza has had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

57.     At all relevant times, Bokovza has had the power to transfer the assets and/or liabilities of the Sushi Samba restaurants.

58.     At all relevant times, Bokovza has had the power to declare bankruptcy on behalf of the Sushi Samba restaurants.

59.     At all relevant times, Bokovza has had the power to enter into contracts on behalf of the Sushi Samba Restaurants.

---

[6]     http://www.bbook.com/industry-insiders-shimon-bokovza-samba-savvy/

60.     At all relevant times, Bokovza has had the power to close, shut down, and/or sell the Sushi Samba restaurants. In fact, upon information and belief Bokovza was involved in the decision to close the Gramercy Sushi Samba.

61.     Bokovza is a covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, has employed and/or jointly employed Plaintiff and similarly situated employees.

**Danielle Billera**

62.     Upon information and belief, Billera is a resident of the State of New York.

63.     At all relevant times, Billera has been the co-founder, owner, and operator of the Sushi Samba restaurants.

64.     On SBM's website, Billera is identified as the "Managing Partner" of the Sushi Samba restaurants.

65.     The Entity Information provided by the New York State Department of State Division of Corporations identifies Billera as the "Chief Executive Officer" of Avenue.

66.     Billera is identified as the "Principal" on the New York State Liquor License for Barrow and Avenue.

67.     At all relevant times, Billera  has had power over personnel decisions at the Sushi Samba Restaurants, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

68.     At all relevant times, Billera has had power over payroll decisions at the Sushi Samba restaurants, including the power to retain time and/or wage records.

69.     At all relevant times, Billera has been actively involved in managing the day to day operations of the Sushi Samba restaurants.

70.     At all relevant times, Billera has had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

71.     At all relevant times, Billera has had the power to transfer the assets and/or liabilities of the Sushi Samba restaurants.

72.     At all relevant times, Billera has had the power to declare bankruptcy on behalf of the Sushi Samba restaurants.

73.     At all relevant times, Billera has had the power to enter into contracts on behalf of the Sushi Samba Restaurants.

74.     At all relevant times, Billera has had the power to close, shut down, and/or sell the Sushi Samba restaurants. In fact, upon information and belief Billera was involved in the decision to close the Gramercy Sushi Samba.

75.     Billera is a covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, has employed and/or jointly employed Plaintiff and similarly situated employees.

**Matthew Johnson**

76.     Upon information and belief, Johnson is a resident of the State of New York.

77.     At all relevant times, Johnson has been the co-founder, owner, and operator of the Sushi Samba restaurants.

78.     On SBM's website, Johnson is identified as the "Managing Partner" of the Sushi Samba restaurants.

79.     Johnson is identified as the "Principal" on the New York State Liquor License for Barrow and Avenue.

80.     At all relevant times, Johnson has had power over personnel decisions at the Sushi Samba restaurants, including the power to hire and fire employees, set their wages, and

otherwise control the terms and conditions of their employment.

81.     At all relevant times, Johnson has had power over payroll decisions at the Sushi Samba restaurants, including the power to retain time and/or wage records.

82.     At all relevant times, Johnson a has been actively involved in managing the day to day operations of the Sushi Samba restaurants.

83.     At all relevant times, Johnson has had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

84.     At all relevant times, Johnson has had the power to transfer the assets and/or liabilities of the Sushi Samba restaurants.

85.     At all relevant times, Johnson has had the power to declare bankruptcy on behalf of the Sushi Samba restaurants.

86.     At all relevant times, Johnson has had the power to enter into contracts on behalf of the Sushi Samba Restaurants.

87.     At all relevant times, Johnson has had the power to close, shut down, and/or sell the Sushi Samba restaurants. In fact, upon information and belief Johnson was involved in the decision to close the Gramercy Sushi Samba.

88.     Johnson is a covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, has employed and/or jointly employed Plaintiff and similarly situated employees.

## JURISDICTION AND VENUE

89.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1337, and jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

90.     This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

91.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

92.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## COLLECTIVE ACTION ALLEGATIONS

93.     Plaintiff brings the First Cause of Action, the FLSA claim, on behalf of himself and all similarly situated current and former Tipped Employees employed at the Sushi Samba restaurants in New York owned, operated, and/or controlled by Defendants, for a period of three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, and who elect to opt-in to this action (the "FLSA Collective Members").

94.     At all relevant times, Plaintiff and the FLSA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decision, policy, plan, and common programs, practices, procedures, protocols, routines, and rules of willfully failing and refusing to pay Plaintiff at the legally required minimum wage for all hours worked. Plaintiffs' claims stated herein are essentially the same as those of the other FLSA Collective Members.

95.     Defendants' unlawful conduct, as described in this Class Action Complaint, is pursuant to a corporate policy or practice of minimizing labor costs by failing to record the hours that employees work.

96.     Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all of the hours they work.

97.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

98.     The First Cause of Action is properly brought under and maintained as an opt-in collective action pursuant to 29 U.S.C. 216(b).

99.     The FLSA Collective Members are readily ascertainable.

100.    For the purpose of notice and other purposes related to this action, the FLSA Collective Members' names and addresses are readily available from Defendants' records.

101.    Notice can be provided to the FLSA Collective Members via first class mail to the last address known to Defendants.

102.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

## CLASS ACTION ALLEGATIONS

103.    Plaintiff brings the Second, Third, Fourth, and Fifth Causes of Action, NYLL claims, under Rule 23, on behalf of himself and a class of persons consisting of:

> All persons who work or have worked as Tipped Employees and similar employees at the Sushi Samba restaurants in New York between May 13, 2009 and the date of final judgment in this matter (the "Rule 23 Class").

104.    Excluded from the Rule 23 Class Members are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

105.    The members of the Rule 23 Class ("Rule 23 Class Members") are readily ascertainable. The number and identity of the Rule 23 Class Members are determinable from the Defendants' records. The hours assigned and worked, the positions held, and the rates of pay for

each Rule 23 Class Member are also determinable from Defendants' records. For the purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

106. The Rule 23 Class Members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

107. There are more than fifty Rule 23 Class Members.

108. Plaintiffs' claims are typical of those claims which could be alleged by any Rule 23 Class Member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class Member in separate actions.

109. All the Rule 23 Class Members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to properly distribute tips, failing to provide proper wage and hour notices, and failing to provide proper wage statements.

110. Plaintiff and the Rule 23 Class Members have all sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.

111. Plaintiff and the Rule 23 Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected all Rule 23 Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class Members.

112. Plaintiff and other Rule 23 Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

113.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class Members and has no interests antagonistic to the Rule 23 Class Members.

114.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

115.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries, and damages suffered by each of the individual Rule 23 Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Rule 23 Class Members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual Rule 23 Class Members would create a risk of inconsistent and/or varying adjudications with respect to the individual Rule 23 Class Members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the Rule 23 Class Members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide

proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

116. Upon information and belief, Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

117. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

118. Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class Members individually and include, but are not limited to, the following:

(a) whether Defendants violated NYLL Articles 6 and 19, and the supporting New York State Department of Labor Regulations;

(a) whether Defendants employed Plaintiff and the Rule 23 Class Members within the meaning of the NYLL;

(b) whether Defendants paid Plaintiff and the Rule 23 Class Members at the proper minimum wage rate for all hours worked;

(c) whether Defendants had a policy or practice of failing to provide adequate notice of their payment of a reduced minimum wage to Plaintiff and the Rule 23 Class Members;

(d) what notice is required in order for Defendants to take a tip credit under New York State Department of Labor regulations;

(e) at what common rate, or rates subject to common methods of calculation, Defendants were required to pay Plaintiff and the Rule 23 Class Members for their work;

(h) whether Defendants misappropriated tips from Plaintiff and the Rule 23 Class

Members by demanding, handling, pooling, counting, distributing, accepting, and/or retaining tips and/or service charges paid by customers that were intended for Plaintiff and the Rule 23 Class Members, and which customers reasonably believed to be gratuities for Plaintiff and the Rule 23 Class Members;

(i)     whether Defendants distributed a portion of the tips paid by customers to Employees who are not entitled to receive tips under the NYLL;

(j)     whether Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiff and the Rule 23 Class Members, and other records required by the NYLL;

(k)     whether Defendants failed to furnish Plaintiff and the Rule 23 Class Members with proper annual wage notices, as required by the NYLL;

(l)     whether Defendants failed to furnish Plaintiff and the Rule 23 Class Members with an accurate statement of wages, hours worked, rates paid, gross wages, and the claimed tip allowance, as required by the Wage Theft Prevention Act;

(m)     whether Defendants' policy of failing to pay Tipped Employees was instituted willfully or with reckless disregard of the law; and

(n)     the nature and extent of class-wide injury and the measure of damages for those injuries.

119.    In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

## PLAINTIFF'S FACTUAL ALLEGATIONS

120.    Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiff, individually, as follows:

**Don Hadel**

121.    Defendants did not pay Hadel the proper minimum wages for all of the time that he was suffered or permitted to work each workweek.

122.    Throughout the duration of his employment at the Sushi Samba restaurants, Hadel received weekly paychecks from Defendants that did not properly record or compensate him for all the hours that he worked.

123.    During his employment, Hadel generally worked the following scheduled hours unless he missed time for vacation, sick days, or holidays: 3 shifts per week from approximately 5:30 p.m. until 10:30 p.m. or 11:00 p.m.

124.    Defendants paid Hadel at the New York tipped minimum wage rate.

125.    Defendants failed to notify Hadel in writing of the tip credit provisions of the NYLL, or of their intent to apply a tip credit to his wages.

126.    Defendants failed to notify Hadel verbally or in writing of the tip credit provisions of the FLSA, or of their intent to apply a tip credit to his wages.

127.    Defendants unlawfully required Hadel to share tips with Sushi Chefs, employees in positions that are not entitled to share tips under the FLSA and/or the NYLL.

128.    As a result of the above, Defendants did not satisfy the requirements under the FLSA, and NYLL by which they could apply a tip credit to Hadel's wages. As such, Hadel should have been paid the full minimum wage not the reduced tipped minimum wage rate.

129.    Defendants did not allow Hadel to retain all the tips he earned.

130.    Defendants unlawfully demanded, handled, pooled, counted, distributed, accepted, and/or retained portions of the tips that Hadel earned.

131.    Defendants imposed upon Hadel a tip redistribution scheme to which he never agreed.

132.    Defendants' mandatory tip pooling arrangement allocated a portion of Hadel's tips to employees who are in positions that are not entitled to tips under the FLSA and/or the NYLL, including, but not limited to, Sushi Chefs.

133.    Defendants unlawfully allocated a percentage of the mandatory service charge received from customers hosting private events to employees who are in positions that are not entitled to tips under the FLSA and/or the NYLL.

134.    Defendants did not keep accurate records of wages or tips earned, or of hours worked by Hadel.

135.    Defendants failed to furnish Hadel with proper annual wage notices, as required by the NYLL.

136.    Defendants failed to furnish Hadel with accurate statements of wages, hours worked, rates paid, gross wages, and the claimed tip allowance.

### FIRST CAUSE OF ACTION
### Fair Labor Standards Act – Minimum Wages
### (Brought on behalf of Plaintiff and the FLSA Collective)

137.    Plaintiff, on behalf of himself and the FLSA Collective Members, realleges and incorporates by reference all allegations in all preceding paragraphs.

138.    Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Class Action Complaint.

139.    At all relevant times, each of the Defendants have been, and continue to be, an employer engaged in interstate commerce and/or in the production of goods for commerce,

within the meaning of FLSA, 29 U.S.C. § 203. At all relevant times, each Defendant has employed "employee[s]," including Plaintiff and the FLSA Collective Members.

140. Defendants were required to pay directly to Plaintiff and the FLSA Collective Members the applicable New York State minimum wage rate for all hours worked.

141. Defendants failed to pay Plaintiff and the FLSA Collective Members the minimum wages to which they are entitled under the FLSA.

142. Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 *et seq.*, because Defendants failed to inform Plaintiff and FLSA Collective Members of the provisions of subsection 203(m) of the FLSA, and distributed a portion of their tips to Employees who do not "customarily and regularly" receive tips.

143. Defendants' unlawful conduct, as described in this Class Action Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Class Action Complaint were unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the FLSA Collective Members.

144. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

145. As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective Members have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

### SECOND CAUSE OF ACTION
### New York Labor Law – Minimum Wage
### (Brought on behalf of Plaintiff and the Rule 23 Class)

146.    Plaintiff, on behalf of himself and the Rule 23 Class Members, realleges and incorporates by reference all allegations in all preceding paragraphs.

147.    Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Class Action Complaint.

148.    At all times relevant, Plaintiff and the Rule 23 Class Members have been employees of Defendants, and Defendants have been employers of Plaintiff and the Rule 23 Class Members within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

149.    At all times relevant, Plaintiff and the Rule 23 Class Members have been covered by the NYLL.

150.    The wage provisions of Article 19 of the NYLL and the supporting New York State Department of Labor Regulations apply to Defendants, and protect Plaintiff and the Rule 23 Class Members.

151.    Defendants failed to pay Plaintiff and the Rule 23 Class Members the minimum hourly wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

152.    Defendants were required to pay the New York Plaintiffs and the Rule 23 Class Members the full minimum wage at a rate of; (a) $7.15 per hour for all hours worked from January 1, 2007 through July 23, 2009; (b) $7.25 per hour for all hours worked from July 24, 2009 through the December 30, 2013; (c) $8.00 per hour for all hours worked from December 31, 2013 to December 30, 2014; and (d) $8.75 per hour for all hours worked from December 31,

2014 to the present   under the NYLL §§ 650 *et seq.* and the supporting New York State Department of Labor Regulations.

153.    Prior to January 1, 2011, Defendants failed to furnish with every payment of wages to Plaintiff and the Rule 23 Class Members a statement listing hours worked, rates paid, gross wages, and tip allowance claimed as part of their minimum hourly wage rate, as required by the NYLL and the supporting New York State Department of Labor Regulations.  As a result, Plaintiff and the Rule 23 Class Members were entitled to the full minimum wage rate rather than the reduced tipped minimum wage rate during this time period.

154.    Prior to January 1, 2011, Defendants failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff and the Rule 23 Class Members as required by the NYLL and the supporting New York State Department of Labor Regulations.  As a result, Plaintiff and the Rule 23 Class Members were entitled to the full minimum wage rate rather than the reduced tipped minimum wage rate during this time period.

155.    Since January 1, 2011, Defendants have failed to notify Plaintiff and the Rule 23 Class Members of the tip credit in writing as required by the NYLL and the supporting New York State Department of Labor Regulations.  As a result, Plaintiff and the Rule 23 Class Members have been entitled to the full minimum wage rate rather than the reduced tipped minimum wage rate during this time period.

156.    Defendants have required Plaintiff and the Rule 23 Class Members to share gratuities with Employees who are not eligible to receive tips under the NYLL and the supporting New York State Department of Labor Regulations.  As a result, Plaintiff and the Rule 23 Class Members have been entitled to the full minimum wage rate rather than the reduced tipped minimum wage rate at all relevant times.

157.    Through their knowing or intentional failure to pay minimum hourly wages to Plaintiff and the Rule 23 Class Members, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

158.    Due to Defendants' willful violations of the NYLL, Plaintiff and the Rule 23 Class Members are entitled to recover from Defendants their unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### THIRD CAUSE OF ACTION
#### New York Labor Law –Tip Misappropriation
#### (Brought on behalf of Plaintiff and the Rule 23 Class Members)

159.    Plaintiff, on behalf of himself and the Rule 23 Class Members, realleges and incorporates by reference all allegations in all preceding paragraphs.

160.    Defendants unlawfully demanded or accepted, directly or indirectly, part of the gratuities received by Plaintiff and the Rule 23 Class Members in violation of NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

161.    Defendants unlawfully retained part of the gratuities earned by Plaintiff and the Rule 23 Class Members in violation of NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

162.    Defendants required Plaintiff and the Rule 23 Class Members to share a portion of the gratuities and/or service charges they received with employees other than servers, bussers, runners, bartenders, or similar employees, in violation of NYLL, Article 6 § 196-d, and the supporting New York State Department of Labor Regulations.

163.    By Defendants' knowing or intentional demand for, acceptance of, and/or retention of a portion of the gratuities and/or service charges received by Plaintiffs and the Rule

23 Class Members. Defendants have willfully violated the NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

164.    Due to Defendants' willful violations of the NYLL, Plaintiff and the Rule 23 Class Members are entitled to recover from Defendants their unpaid gratuities and/or service charges, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### FOURTH  CAUSE OF ACTION
### New York Labor Law – Failure to Provide Annual Wage Notices
### (Brought on behalf of Plaintiff and the Rule 23 Class)

165.    Plaintiff, on behalf of himself and the Rule 23 Class Members, realleges and incorporates by reference all allegations in all preceding paragraphs.

166.    Defendants have willfully failed to supply Plaintiff and the Rule 23 Class Members with wage notices, as required by NYLL, Article 6, § 195(1), in English or in the language identified as their primary language, containing Plaintiff's and the Rule 23 Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

167.    Through their knowing or intentional failure to provide  Plaintiff and the Rule 23 Class Members with the wage notices required by the NYLL, Defendants have willfully violated

NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

168.    Due to Defendants' willful violations of NYLL, Article 6, § 195(1), Plaintiff and the Rule 23 Class Members are entitled to statutory penalties of fifty dollars for each workweek that Defendants failed to provide them with wage notices, or a total of twenty-five hundred dollars, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-b).

**FIFTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Accurate Wage Statements**
**(Brought on behalf of Plaintiff and the Rule 23 Class)**

169.    Plaintiff, on behalf of himself and the Rule 23 Class Members, realleges and incorporates by reference all allegations in all preceding paragraphs.

170.    Defendants have willfully failed to supply Plaintiff and the Rule 23 Class Members with accurate statements of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

171.    Through their knowing or intentional failure to provide Plaintiff and the Rule 23 Class Members with the accurate wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

172.    Due to Defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiff and the Rule 23 Class Members are entitled to statutory penalties of one hundred dollars for each workweek that Defendants failed to provide them with accurate wage statements, or a total of twenty-five hundred dollars, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of all other similarly situated persons, respectfully requests that this Court grant the following relief:

A.      Designation of this action as a collective action on behalf of the FLSA Collective Members (asserting FLSA claims and state claims) and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B.      Unpaid minimum wages and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.      Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel;

E.      Issuance of a declaratory judgment that the practices complained of in this Class Action Complaint are unlawful under the NYLL, Article 6, §§ 190 *et seq.*, NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations;

F.      Unpaid minimum wages misappropriated tips, and other unpaid wages, and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

G.      Statutory penalties of fifty dollars for each workweek that Defendants failed to provide Plaintiff and the Rule 23 Class Members with a wage notice, or a total of twenty-five hundred dollars, as provided for by NYLL, Article 6 § 198;

H.      Statutory penalties of one hundred dollars for each workweek that Defendants failed to provide Plaintiff and the Rule 23 Class Members with accurate wage statements, or a total of twenty-five hundred dollars, as provided for by NYLL, Article 6 § 198;

I.      Prejudgment and post-judgment interest;

J.      An injunction requiring Defendants to pay all statutorily required wages and cease the unlawful activity described herein pursuant to the NYLL;

K.      Reasonable attorneys' fees and costs of the action;

L.      Reasonable service award for the named Plaintiff to compensate him for the time he spent attempting to recover wages for Class and Collective Members and for the risks he took in doing so; and

M.      Such other relief as this Court shall deem just and proper.

Dated:      New York, New York
            May 13, 2015

Respectfully submitted,

Brian S. Schaffer

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
Frank J. Mazzaferro
475 Park Avenue South, 12th Floor
New York, NY 10016
Telephone: (212) 300-0375

*Attorneys for Plaintiff and*
*the Putative Class*

## FAIR LABOR STANDARDS ACT CONSENT

1.      I consent to be a party plaintiff in a lawsuit against SUSHI SAMBA and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

2.      By signing and returning this consent form, I hereby designate FITAPELLI & SCHAFFER, LLP ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement.  I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs. I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount.  I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

Don Hadel
Don Hadel (May 13, 2015)
_____
Signature


Don Hadel
_____
Full Legal Name (Print)


█████████████████
_____
Address


███████         ██████
_____
City, State              Zip Code


██████████
_____
Telephone Number


███████████████████
_____
E-mail Address